**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**


**GLENN E JONES,**

      **Plaintiff,**

**v.**                                **CASE NO. 5:05-cv-00074-RS-AK**

**BAY COUNTY SOLID WASTE,
RICHARD HUNT,
RANDY JOHNSON,
ALICE MARTIN,**

      **Defendants.**

_____/


## REPORT AND RECOMMENDATION

      Plaintiff brings this cause of action *pro se* alleging that the Defendants, his former

employers and alleged government officials, violated his civil rights under the First and

Fourteenth Amendments, as well as several federal laws, when they fired him in

retaliation for bringing unsafe job conditions to their attention.  (Doc. 9).  Defendants

have moved to dismiss the complaint (doc.  17), and Plaintiff has responded.  (Doc. 18).

**I.**     **Allegations of the Second Amended Complaint (doc. 9)**

      Plaintiff claims that he was hired by Bay County Solid Waste as a truck driver on

April 26, 2004, and was terminated on August 8, 2004, because he reported dangerous

conditions at the incinerator and lethal electric shock hazards at the trash compactor at

the Bay County facility in Panama City Beach.  Plaintiff claims that he met with

Defendant Richard Hunt, Solid Waste Manager, on June 15, 2004, to advise him of

these conditions, but Defendant Hunt apparently did not act on these problems, and it

appears that he turned the issues over to Defendant Alice Martin, Risk Manager, who

did not prepare a report on the allegations until December 21, 2004.  Allegedly

Defendant Martin then reportedly made statements in a newspaper that disparaged him

and has prevented him from getting work in his field in that area.  Plaintiff claims that

Defendant Randy Johnson dismissed Plaintiff after using him during the busiest season

and was allegedly dishonest about the true reason for his dismissal.

 Plaintiff bases his claims on his First and Fourteenth Amendment protections

against retaliation for whistle blowing; the whistle blowing protections in the False

Claims Act, 33 U.S.C. §3730(h); whistle blower provisions set forth under the Solid

Waste Disposal Act, 42 U.S.C. §6971; the Surface Transportation Assistance Act, 49

U.S.C. §2305; and the Occupational Safety and Health Act, 29 U.S.C. §660(c), as well

as 42 U.S.C. §§1983 and 1988.  Plaintiff also requests that the Court apply whichever

other statutory provisions are applicable.

 Plaintiff seeks compensation for lost wages, benefits, and other "blackball

effects," as well as punitive damages.

 Plaintiff's refers the Court to the exhibits attached to his first amended complaint,

(doc.4), which include:

> A)  Beach Transfer Station Inspection Report dated December 21, 2004
>      (Exhibit A)

The letter of transmittal from Defendant Martin states:

The attached Beach Transfer Station Inspection Report performed by the
Bay County Safety Committee completes the records request in your
correspondence dated November 13, 2004.
The cost for the additional document is 45 cents.

The report is attached to the letter and addresses a number of issues at the

plant.

B)     Solid Waste Personnel Meeting Notes dated June 15, 2004 (Exhibits B,C)

A summary of the notes, both handwritten and typed, is that Plaintiff met with

Defendants Hunt and Johnson, as well as Glenn Osborn, Facilities Superintendent, and

Barbara Mize, Staff Assistant, to "address concerns of new employee," which were

listed as "problems with BTS compactor, WTE tipping floor."  The tipping floor concerns

were described as "when backing up to the tip floor, concerned with how close the front

end loader is coming to my truck."  Apparently, Plaintiff said he had called this concern

to the attention of the loader drivers and all but one of them gave him the space.  A

confrontation between Plaintiff and this driver resulted in a complaint being filed with

"Mr. Beecham," but this driver eventually apologized for coming in so close.  Plaintiff

brought information with him to the meeting concerning deaths at other facilities, and

the fact that there are no OSHA standards which spell out safe distance, but Plaintiff

believed that 6' to 10' is too close, and there were also problems with improper lighting

and right of way liability.  There were issues of excessive speed by other drivers also.

Plaintiff's concern with the compactor was that when it backed up he was ankle

deep in water with an "electrical 440" operating.  Johnson expressed his concerns that

Plaintiff needed to improve his skills operating the compactor perhaps by scheduling

more time for him to work the compactor, and Plaintiff expressed his belief that he could

learn it with more experience.  Hunt asked Johnson about the water problem and

Johnson said he had built a platform, "but it needs more work."  Hunt asked Plaintiff if

he had enough protective equipment, and he said he did, and he asked if Plaintiff felt

like the meeting addressed his concerns, and he said he wanted them addressed on "a

smaller scale."  Hunt then said that safety was a priority with him and that he would "sit

down with Montenay Bay" and address the tipping floor issues.  He told Plaintiff to learn

the equipment and be an example, and that he had no issues with Plaintiff continuing to

work at the "BTS" or "WTE."  Johnson and Osborn discussed the bad lighting on the

tipping floor and the need to have lights on the vehicles so that the guys could see what

they are backing into.

      C)     Notes (Exhibit D)

These papers apparently reflect Plaintiff's notes about a conversation with

"Chaimous Beecham."  The date or circumstances are not identified.

      D)     Memorandum/letter from Plaintiff to Richard Hunt (Exhibit E)

The letter concerns Plaintiff's dismissal.  Plaintiff says that Johnson told him he

was not fitting in and asked that he voluntarily resign with the implication that Plaintiff

could work elsewhere for the county, but Plaintiff found out later from "Maria at Human

Resources" that he would not be hired by the county ever.  Plaintiff called Alice Martin

and they agreed to talk.  Plaintiff expressed his concern that the safety meeting in June

started some friction or his memoranda, which followed, embarrassed Johnson.  Plaintiff

then reiterated his safety concerns and asked that his good standing be reinstated and

that he not be penalized for addressing safety issues.

      E)     Letter to Richard Hunt dated October 15, 2004 (Exhibit F)

Plaintiff notes initially that the letter is a written follow up to a conversation held

with Hunt on September 24, 2004.  He thanks Hunt for suggesting he further his

education and notes that he wanted to work with the EMS or fireman training, but "this

ongoing 'issue' with Bay County" blocked him because "of what I have repeatedly stated

is my wrongful and unethical termination at the solid waste dept."  Plaintiff expresses

frustration at the responsibility for the decision to fire him being tossed back and forth

between Hunt and Martin, and explains that this was why he wrote to the Bay County

Commissioners.  He hopes that the Commissioners examine BTS more closely, but

believes that Johnson "has tried to sweep some dangerous practices under the table."

He adds that he was the only permanent employee who wore a hard hat or safety

glasses and that the smoke-free work place was not smoke-free, and he got tired of

cleaning up a filthy break room, including an excrement covered toilet.  Plaintiff

expresses his suspicion that he was let go on August 9th because another employee

had returned from a motorcycle accident and the busy summer season was winding

down.  Plaintiff takes issue with Johnson's explanation that Plaintiff had not mastered

the compactor after Plaintiff ran "the hill" on his own on August 2, 2004, an extremely

busy day.  Plaintiff believes Johnson set this up as a test or some type of initiation, but

he passed it and was never evaluated or spoken to about his performance until he was

let go.  Plaintiff claims that if Johnson had not ruined his future hiring possibilities, he

would not be so bothered.  Plaintiff threatens to follow through with this for himself, as

well as others who do not want to be part of the good old boy system and because

safety is still being ignored.

      F)    <u>Letter to Mr. Hunt dated November 2004 (Exhibit G)</u>

      Plaintiff refers to his previous letter of October 15, 2004, and complains that he

has gotten no reply.  Plaintiff denies that he was the one who initiated the June safety

meeting and asserts that he had a perfect attendance record during his four months on

the job, and that it should not have taken a supervisor that long to figure out it was a

performance problem, if that was the problem.  Plaintiff cites an incident when he had to

borrow a truck with tools and that the tools at BTS were not cared for.  He offered to

take a lie detector test that he did not take any Bay County equipment.  Plaintiff lists

safety hazards: (1) 440 volt electricity in immediate proximity of wet trash and sewage;

(2) water and sewage pool under the compactor without drainage; (3) no emergency

well marked shut down switches; and (4) safety lock out equipment was never used or

demonstrated; (5) trucks were routinely overweight and in poor service; (6) back up

warning beepers were broken and his warnings were ignored by Johnson.  Plaintiff

claims that a transcript of the safety meeting in June would show that he was not trying

to be the "hero whistle blower," he was just trying not to get killed, and Mr. Beecham

had told him that there were many accidents and deaths at similar facilities.  Plaintiff

warns that he will get legal counsel.

      G)    <u>Letter to Alice Martin (Exhibit G-II)</u>

      Plaintiff complains that he does not understand how she could have no

documents regarding the safety of the compactor, and he finds it trivial to charge him

$3.30 in postage for sending him relevant information.  He wants a full transcript of the

safety meeting in June and finds it implausible that there was no such transcript.

Plaintiff also requests a written termination letter and complains that she did not advise

him to file a complaint with the EEOC.

      H)    <u>Letter to Alice Martin, Pamela D. Brangaccio and the Commissioners (H)</u>

      Plaintiff claims that Tommy Jackson of the DOT reviewed Beach Transfer Station

and said that the trucks should not be overweight, that Solid Waste has their own scales

so there was no excuse for being overweight, and that he met with Hunt and would be

keeping a close eye on the situation.  Plaintiff states that the weight problem was not his most serious concern, the compactor problems were more dangerous.  Plaintiff complains that Martin did not provide him with meaningful arbitration, that she did not give him a list of federal agencies where he could direct his concerns, and she did not investigate his concerns timely.

   I)   Letter to Commissioner (Exhibit I)

Plaintiff requests that the Commissioner read the meeting notes from the June 15, 2004, meeting, and his letter to Mr. Hunt dated August 11, 2004, which Hunt had said he would mail or fax to the Commissioner upon request.  He then states that he believes his termination was wrong and unethical, he was still on probation, and that he called to attention life threatening safety issues, which resulted in his being fired.  Then, Plaintiff recited the substance of conversations with Martha Lieman and Hunt and complains that he has been barred from rehire forever because of their actions even though he has a flawless commercial driving record.

   J)   Letter to Chief Inspector General (Exhibit J)

Plaintiff advises the IG of the dangerous conditions at Bay County and that he was fired for complaining about them to his supervisors.  He is not only a non rehire for six months, but complains that he has been black balled forever and will have to either move or die.

   K)   Letter from Chief Inspector General to Plaintiff (Exhibit K)

Dated December 14, 2004, the IG advises Plaintiff the IG's office does not have the authority or jusidiction to investigate local government agencies or employees.  He refers him to his local elected officials.  Attached is a copy of his original letter to the IG

and a copy of the Florida Statutes defining the authority of the OIG.

L)      Letter to Governor Bush dated December 27, 2004 (Exhibit M)

Plaintiff states his opinion that he was fired from Bay County for complaining about life threatening safety issues, and that he is also being prevented from working for Bay County in any capacity.  He questions the IG's assessment that it lacks the jurisdiction to investigate this matter and asks that the Governor investigate the matter.

M)      Letter from Richard Hunt to Plaintiff dated September 23, 2004 (N)

Mr Hunt responds to Plaintiff's note of Akugust 11, 2004, and advises that Ms. Martin would be in a better position to address his employment concerns, but he reiterates his concern for safety and assures Plaintiff that the issues he brought to his attention "have been addressed with appropriate staff."

N)      Letter to Ms. Martin dated April 11, 2005 (Exhibit O)

Plaintiff asks for documentation of her verbal comments that he would never be eligible for rehire by Bay County.

O)      Letter to Pamela D. Brangaccio dated November 13, 2004 (Exhibit P)

Plaintiff refers to her letter of November 2, 2004, and he reiterates his complaints about Ms. Martin and his termination.  The letter to Ms. Martin, previously submitted as Exhibit O is attached.

P)      Copy of Newspaper article dated April 19, 2005

In The News Herald, Panama City, Florida, discusses Plaintiff's lawsuit claiming that he was fired for voicing safety concerns about solid waste operations and the County's statement that he was fired for performance problems.  Defendant Martin is quoted as saying it was the first time in 14 years that someone was suing the county on

these grounds.  According to the article, it is Bay County policy that when someone is terminated during the six month probationary period they can never be rehired in any arm of county operations.  Hunt was quoted as saying that Plaintiff's suggestions were meaningful and some issues were acted on, but management documented several performance issues and denied that he was fired for raising safety concerns.

## II.    Standard of Review

"The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true."  Boyer v. Board of County Comm'rs, 922 F. Supp. 476, 482 (D. Kan. 1996), aff'd, 108 F.3d 1388, citing Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993); Mitchell v. Farcass, 112 F.3d 1483, 1487 (11th Cir. 1997); Mannings v. Board of Public Instr. of Hillsborough County, Fla., 277 F.2d 370, 372 (5th Cir. 1960).  The court should not weigh the evidence, but merely "determine whether the complaint itself is legally sufficient."  In re Mosello, 190 B.R. 165, 168, aff'd, 193 B.R. 147, aff'd, 104 F.3d 352 (Bankr. S.D.N.Y. 1995), citing Festa v. Local 3, Int'l Brotherhood of Elec. Workers, 905 F.2d 35, 37 (2d Cir. 1990).  Dismissal of a complaint should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.  Conley v. Gibson, 355 U.S. 41, 45-6, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).  The motion to dismiss will be granted if the "complaint fails to allege the violation of a clearly established constitutional right."  St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002), citing Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001), (citing Williams v. Ala. State Univ., 102 F.3d 1179, 1182 (11th Cir. 1997)).

All well-pleaded factual allegations and reasonable inferences from those allegations must be accepted as true in ruling upon a motion to dismiss.  Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992)(citation omitted), *cert. denied*, 113 S. Ct. 1586 (1993).  However, this does not mean "that every statement in a complaint must be accepted as true."  In re Mosello, 190 B.R. at 168.  The "court need not accept 'sweeping and unwarranted averments of fact.'"  *Id.*, *citing* Perniciaro v. Natale, 136 B.R. 344, 348 (Bankr. E.D.N.Y. 1992), *quoting* Haynesworth v. Miller, 820 F.2d 1245, 1254 (D.C. Cir. 1987).  Claims which "rely upon conclusory statements of law" need not be accepted.  Northern Trust Co. v. Peters, 69 F.3d 123, 129 (7th Cir. 1995).  Conclusory statements and their inferences "are not sufficient to defeat a motion to dismiss for failure to state a claim."  Northern Trust Co., 69 F.3d at 129; *see also* Quality Foods de Centro America, 711 F.2d 989, 995 (11th Cir. 1983)(finding "[c]onclusory allegations that defendant violated the antitrust laws and plaintiff was injured thereby will not survive a motion to dismiss if not supported by facts constituting a legitimate claim for relief.")

*Pro se* complaints are to be held to a less stringent standard than those drafted by an attorney.  Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986), *citing* Haines v. Kerner, 404 U.S. 519, 520-1, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972).  However, a plaintiff is still required to "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  Worst v. Hart, 1995 WL 431357, *2 (N.D. Fla. 1995).  It cannot be assumed that a Plaintiff will prove facts which have not been alleged.  Quality Foods de

<u>Centro America</u>, 711 F.2d at 995, *citing* <u>Associated General Contractors of California,</u>

<u>Inc. v. California State Council of Carpenters</u>, 459 U.S. 519, 103 S. Ct. 897, 902, 74 L.

Ed. 2d 723 (1983).  Hence, even though the pleading standard for a *pro se* complaint is

quite liberal, "bald assertions and conclusions of law will not suffice."  <u>Leeds v. Meltz</u>, 85

F.3d 51, 53 (2d Cir. 1996).  Additionally, the court's duty to construe a plaintiff's

complaint liberally is not the equivalent of a duty to rewrite it.  <u>Peterson v. Atlanta</u>

<u>Housing Auth.</u>, 998 F.2d 904, 912 (11th Cir. 1993).

**III.     Defendants' Motion to Dismiss (doc. 17)**

      a)     <u>Plaintiff's statutory claims</u>

      Defendants assert in a footnote that the other statutory claims plaintiff makes "do

not appear" to be viable:

> While ¶¶ 20(a) through (e) refer to a number of statutory whistle blower
> protection provisions, these do not appear to form the basis, nor do these
> appear to be applicable to Plaintiff's claim.  Indeed the cited statutory
> provisions involve various administrative remedies, or claims requiring as
> conditions precedent the exhaustion of administrative remedies which are
> not alleged to have occurred.  Rather, it appears that Plaintiff is attempting
> to assert §1983 claims for violation of his First Amendment rights, i.e., his
> complaints to the County about unsafe conditions of his job.

Defendants cite no legal authority for their general contentions that these statutes

require exhaustion or other unspecified conditions precedent, and it is not the Court's

duty to do their research for them.  It is Defendants' burden on a motion to dismiss to

show that Plaintiff could not prevail on these statutory claims as a matter of law, yet they

cite no law.  Thus, with regard to Plaintiff's claims asserted under the False Claims Act,

33 U.S.C. §3730(h); the Solid Waste Disposal Act, 42 U.S.C. §6971; the Surface

Transportation Assistance Act, 49 U.S.C. §2305; and the Occupational Safety and Health Act, 29 U.S.C. §660(c), the motion to dismiss is denied.

     b)    <u>Qualified Immunity</u>

Plaintiff does not specify whether he asserts his claims against the public officials in their individual or official capacities, and for purposes of the motion to dismiss Defendants are presuming that Plaintiff is suing them in their individual capacities and asserting the defense of qualified immunity.[1]

Qualified immunity protects a government official who was performing discretionary functions from an award of civil damages in a § 1983 action unless he violated "clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

The first step is to determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation. <u>Conn v. Gabbert</u>, 526 U.S. 286, 290, 119 S.Ct. 1292, 1295, 143 L.Ed.2d 399 (1999), *citing* <u>Siegert v. Gilley</u>, 500 U.S. 226, 232-233, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), and <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 841, n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

Plaintiff has alleged that he worked for Bay County as a solid waste truck driver, that he was therefore a public employee, and that he complained to his superiors, who

---

[1]  Indeed, the Eleventh Amendment precludes recovery of damages from state officials sued in their official capacities.  <u>Kentucky v. Graham</u>, 473 U.S. 159 (1985).

were public employers, that there were safety violations at the facility and they fired him for this.

For a public employee to show that an employer impermissibly burdened a constitutional right, the employee must first show that the asserted right is protected by the Constitution and that he suffered an adverse employment action by exercising that right. McCabe v. Sharrett, 12 F.3d 1558 (11th Cir. 1994). The law is well settled that a state may not discharge a public employee for asserting his right to freedom of speech protected by the First Amendment. See Pickering v. Board of Education, 391 U.S. 563 (1968), Bryson v. City of Waycross, 888 F.2d 1562 (11th Cir. 1989).

The facts in Pickering concerned a public employee who suffered an adverse employment action in retaliation for exercising free speech, and the Supreme Court adopted a balancing test to determine whether the adverse employment action was unconstitutional. A public employee's right to freedom of speech is not absolute. Rankin v. McPherson, 483 U.S. 378 (1987). The Court balanced the interests of the citizen in commenting on matters of public concern with the interests of the employer in promoting the efficiency of the public services it performs through its employees. Pickering, 391 U.S. at 568. Before applying this test, two threshold matters must be determined: (1) whether the public employee has suffered an adverse employment action; and (2) whether the employee's speech can be "fairly characterized as constituting speech on a matter of public concern." Connick v. Myers, 461 U.S. 138, 146 (1983).

Adverse employment actions have been defined as a matter of law as

discharges, demotions, refusals to hire, refusals to promote and reprimands.  Coffer v. Marbury, 956 F.2d 1045 (11th Cir. 1992).  Thus, as a threshold matter, Plaintiff's discharge is, as a matter of law, an adverse employment action.

For speech to be protected as speech on a matter of public concern, it must relate to a matter of political, social, or other concern to the community. Watkins v. Bowden, 105 F.3d 1344, 1353 (11th Cir.1997). If the speech at issue is personal in nature, and "cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment."  Connick, 461 U.S. at 146.  A mix of Plaintiff's personal and public concerns regarding the work environment does not necessarily disqualify the speech since "[a]n employee's speech will rarely be entirely private or entirely public."  Akins v. Fulton County, 420 F.3d 1293, 1304 (11th Cir. 2005), quoting Morgan v. Ford, 6 F.3d 750, 755 (11th Cir.1993). The court should "take into account the content, form, and context of the speech to glean its 'main thrust,' and if the main thrust of a public employee's speech is on a matter of public concern, then the speech is protected. Akins, 420 F.3d at 1304, quoting Morgan, 6 F.3d at 754-55.

Examining the facts of the present case and taking Plaintiff's allegations as true for purposes of determining the motion to dismiss, he expressed concern to his superiors that there was an electrical hazard at the Bay County Solid Waste facility because of improper draining that allowed standing water to collect in an area close to electric equipment; that trucks were running on county roads "grossly overweight;" that

trucks were coming into the "tipping floor" too fast and too close; and the tipping floor

was unlit.  He expressed these concerns to his superiors during a safety meeting and in

letters to the Bay County Commissioners, the State Office of the Inspector General, and

the Governor of Florida.  While Plaintiff expressed many of these concerns as they

related to him personally, in that he did not want to get crushed or shocked because of

these conditions, the undersigned is of the opinion that these concerns sufficiently affect

others as to be deemed "public concern."  Overweight waste trucks on public highways

necessarily could involve the general public, and an electrical hazard, depending on

facts not before the Court about the location of the facility and its layout, could

necessarily injure other workers and the general public.  Thus, the undersigned finds

that Plaintiff's speech was of public concern, and he has alleged an adverse

employment action for expressing this speech.

      The Pickering balancing test then requires that the interests of the Plaintiff in

commenting on matters of public concern be weighed against the interests of the

employer in promoting the efficiency of the public services it performs through its

employees.  Plaintiff asserts that he is a whistle blower bringing to the attention of the

County, via his supervisors and other state officials, a practice of operating the Bay

County waste operations in an unsafe manner which could injure or kill him or others.

Although Defendants cite the Pickering balancing test, they have asserted no

governmental interests for the Court to weigh against.  Consequently, Plaintiff's

interests in protecting himself and others prevail.

      Defendants also contend that Plaintiff has failed to show that he was fired for

complaining about safety factors, but causation is not a matter of law and will not be determined on a motion to dismiss.  See Bryson v. City of Waycross, 888 F.2d 1562, 1566 n.2 (11th Cir. 1989).  Any further issues concerning causation and damages are factual issues which will be decided by the fact finder or jury.  Id.

For purposes of analysis under the qualified immunity defense asserted by the Defendants, the United States Supreme Court has held that qualified immunity requires that the unlawfulness of an act or omission be apparent in light of pre-existing law. Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 2516, 153 L.Ed.2d 666 (2002), *reversing* Hope v. Pelzer, 240 F.3d 975 (11th Cir. 2001).  *See* Vinyard v. Wilson, No. 02-10898, 2002 WL 31521208 (11th Cir., Nov. 14, 2002) (elaborating on the types of cases).  The rights enumerated above, as established in Pickering, Connick, Bryson, and other cases cited *supra*, were clearly established at the time of the events set forth in the amended complaint, and a reasonable government employee would know that firing an employee in retaliation for alerting him to safety violations at the workplace would violate that employee's rights.  Thus, Defendants are not entitled to qualified immunity.

c)     Claims against Bay County

Plaintiff has failed to allege that a custom, policy or practice of the county resulted in the constitutional violations of which he complains.  It is well settled law that municipal liability for deprivation of civil rights must be predicated upon a policy or custom.  Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978). Plaintiff cannot simply allege that such a policy exists, he must show that the course of action of which he complains was "consciously chosen," or "officially sanctioned or

ordered." <u>Villanueva v. City of Fort Pierce</u>, 24 F. Supp.2d 1364, 1368 (S.D. Fla. 1998), *quoting* <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469 (1986).  Further, the policy must be the cause or "moving force of the constitutional violation." <u>Polk County v. Dodson</u>, 454 U.S. 312, 326 (1981).  Proof of a single incident is generally not sufficient to impose liability under <u>Monell</u>.  <u>City of Oklahoma v. Tuttle</u>, 471 U.S. 808, 823-24 (1985) (there is an exception if the act is made by the policymaker and premised upon an existing policy).  <u>See also</u> <u>Gilmere v. City of Atlanta</u>, 737 F.2d 894, 904 (11th Cir. 1984).  It appears from a reading of the second amended complaint that Plaintiff may have named Bay County simply because this entity was the "employer" of the persons he has named as actually committing the acts of which he complains.  He makes no allegations that the County had an ongoing practice of ignoring safety conditions alleged by their employees or that a policymaker in Bay County leadership ordered the named Defendants to take the actions Plaintiff alleges were taken against him.  Absent such allegations, Bay County is not a proper Defendant in this cause and should be dismissed.  <u>See</u> <u>Cheramie v. Tucker</u>, 493 F.2d 586, 588 (5th Cir. 1974) (states and their political subdivisions are not "persons" within the meaning of section 1983, and are therefore not suable entities).

        d)    <u>Other claim</u>

      Defendants' final ground for dismissal, that Plaintiff did not comply with the Court's previous Order (doc. 7), is not well taken.  That Order was an attempt by the Court to get Plaintiff's claims in the proper format, which he did when he filed an amended complaint.  (Doc. 9).

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants'

Motion to Dismiss Second Amended Complaint (doc. 17) be **GRANTED IN PART**, only

insofar as Defendant Bay County should be dismissed as a named Defendant in this

cause.  It is **FURTHER RECOMMENDED** that the motion to dismiss (doc. 17) be

**DENIED IN ALL OTHER RESPECTS**, and that this cause of action be remanded to the

undersigned for entry of a scheduling order and other matters.

**IN CHAMBERS** at Gainesville, Florida, this 30<u>th</u> Day of June, 2006.


<u>      s/A Kornblum      </u>
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**


**<u>NOTICE TO THE PARTIES</u>**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**